I respectfully dissent from the majority's disposition of this appeal. Their assumption, and it is no more than that, that the City did not prove defendant's ownership or control of the subject property invades the fact-finding prerogatives of the trial court, ignores evidentiary presumptions and judicial admissions which established the City's case. The theory that the majority embraces puts the prosecutor to an onerous and unnecessary burden, i.e., in a criminal case, ownership or control of real property cannot be proven without a title search. That is not the law and it has no application in this case.
In the first place, by a series of judicial admissions, defendant conceded that he was the owner or had control of the property. On December 14, 1998, his counsel filed a motion to quash and/or strike the City's evidence obtained through a search warrant on the grounds that the state never requested permission to inspect the defendant's premises prior to filing the affidavit for the search warrant. Defendant continued there was no authority for a Judge to issue a search warrant unless permission is denied by the land owner. Thus, defendant affirmatively asserted he was entitled to quash the illegally acquired evidence because his permission as landowner was never sought or refused. The defendant is estopped to deny he was the owner of or in control of this property on October 2, 1998 given his representations to the trial court.
Even without this admission, the State was entitled to rely on the evidence that the Brecksville authorities had attempted to go on the property once before; and Mr. Crow said we were not allowed on his property. (Tr. at 179).
The majority acknowledges that there was evidence in the form of correspondence of defendant's ownership and control for seven years but still will not relieve the prosecution of the burden to show that he owned or controlled the property on October 2, 1998. (Maj. Opn. at 6).
In the case herein, numerous letters between the City and defendant were entered into evidence. All of the letters written by the City were addressed to the defendant at the 6745 Miller Road address. These letters began with a letter written on May 20, 1991 from then Building Commissioner Franklin Pasek to defendant advising the defendant to remedy several violations on his property. Defendant responded six days later on May 26, 1991 stating that he could not make the meeting date proposed by Commissioner Pasek and to call with a more convenient date. In this letter, defendant also issued a warning that [N]o one has any right or authority to come on or enter my property except when they come to my home to see me or to my office at 6745 Miller Road. (emphasis added). On April 8, 1996, Building Inspector Miller again wrote a letter to defendant in which he cited the various violations appearing on the property.
On July 25, 1996 Inspector Miller sent another letter to defendant informing the defendant that none of the violations he was given notice of in April had been remedied and defendant was notified to appear at a Building Commissioner's meeting on August 6, 1996. On July 29th, 1996, defendant responded to this letter on letterhead which displayed the defendant's name and the address 6745 Miller Road on the top. In this letter he alleged he was appalled by the July 25, 1996 letter and that he had not received copies of the citizen complaints referenced in the letter. On August 14, 1996, Inspector Miller again wrote to defendant explaining that the purpose of the August 6, 1996 meeting was to get property owners' to voluntarily comply with addressing code violations on their property. The Inspector then extended another opportunity for the defendant to appear to agree to a time table for correcting the violations. On August 27, 1996, Inspector Miller wrote a letter confirming a September 17, 1996 date for meeting.
On November 1, 1996 Building Commissioner Neumann wrote a letter to defendant notifying him that the defendant had failed to submit his promised time table for corrections of the violations. On November 13, 1996, Commissioner Neumann wrote another letter to defendant requesting the timetable. On November 19, 1996, defendant responded on letterhead using the Miller Road address stating that the shopping center plans of which he had promised to inform the City had not been initiated yet and that he had no other timetable obligation.
On December 1, 1996, Inspector Miller sent defendant a letter advising him of various use violations on his property. On January 8, 1997, the defendant responded on letterhead with the Miller address stating in part: As I informed you previously, I had agreed to sell the property I own or control and they intended to build some type of a retail outlet and cluster homes that would comply with your present zoning. (emphasis added). On April 23, 1998, Inspector Miller again sent a letter to defendant advising him of various code violations.
These letters clearly indicate that defendant, if he was not the owner of the property, had sufficient control over the property to be considered the operator of the premises. There was no evidence to the contrary to indicate that defendant no longer had control over the premises at the time of trial. Generally, when the existence of a state of things is once established by proof, the law presumes that the state of things continues to exist as before until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. See 42 O.Jur.3d 396, Evidence and Witnesses S140; 27 O.Jur.3d 409, Criminal Law S1705. These principles have widespread application and explicitly apply to the ownership or possession of real property.
As stated in CJS Evidence S124(4), 232-233:
 Except when there is evidence to the contrary, where it is shown that certain property belongs to a particular person, the law presumes that the ownership remains unchanged, and a person is presumed to remain in possession of which he is shown to have been in possession at one time, although the inference may cease by reason of the lapse of considerable time or the ephemeral character of the subject matter. Where a prior possession and a subsequent possession are shown in the same person and the intervening space of time is short, the presumption is that the intermediate state of possession was the same.
Therefore, although there was no evidence presented that defendant specifically owned or controlled the property on the precise date of October 2, 1998, the letter-evidence amply established proof that the defendant owned and controlled the property prior thereto. His motion to quash claimed the property was defendant's premises on December 14, 1998. In the absence of any contrary evidence, the law presumes defendant owned or controlled the property on October 2, 1998 and any reasonable person would likewise presume.
If every prosecutor is going to have to conduct an up-to-date title search to prove ownership or control of property, the majority will have imposed an expensive and unnecessary burden in proof of various property crimes. I dissent from the majority's decision.